UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

GREAT NORTHERN INSURANCE
COMPANY, *as subrogee of Wilmer Cutler
Pickering Hale and Dorr, LLP*,

    Plaintiff,

v.

RECALL TOTAL INFORMATION
MANAGEMENT, INC., *et al.*

    Defendant.

Civil Action No. TDC-13-1829

**MEMORANDUM OPINION**

This matter is before the Court on a Motion to Dismiss Counts I, II, and III of Plaintiff Great Northern Insurance Company's First Amended Complaint by Defendants Recall Total Information Management, Inc. and Recall Secure Destruction Services, Inc. (collectively, "Recall" or "Defendants"). ECF No. 30. The issue before the Court is whether Plaintiff has sufficiently stated a claim for gross negligence in Count I of its First Amended Complaint. If this Court concludes that Plaintiff has failed to state a claim for gross negligence, Defendants contend that the Court must also dismiss Counts II and III for lack of subject matter jurisdiction, as Defendants' liability on those counts, which they argue is otherwise limited by contract to $54,706, would not exceed the $75,000 threshold for establishing diversity jurisdiction. 28 U.S.C. § 1332(a). Having reviewed the pleadings and supporting documents, the Court finds no hearing necessary. *See* Local Rule 105.6 (D. Md. 2014). For the following reasons, the Defendants' Motion to Dismiss is DENIED.

## I. BACKGROUND[1]

Plaintiff is an insurance company doing business in Maryland that is incorporated in Indiana with its principal place of business in New Jersey. Defendants Recall Total Information Management, Inc. ("Recall Total") and Recall Secure Destruction Services, Inc. ("Recall Secure") are each a Delaware corporation whose principal place of business is in Georgia. At all relevant times, Recall Total engaged in the business of document management and storage, and Recall Secure engaged in the business of document destruction. Together, Recall operated a document storage warehouse facility located at 1501 Cabin Branch Drive, Landover, Maryland (the "Warehouse").

Nonparty Wilmer Cutler Pickering Hale and Dorr, LLP ("WilmerHale") is a law firm with an office in Washington, D.C. WilmerHale stored some of its business records, documents, and other property (the "property") at the Warehouse pursuant to a Master Services Agreement (the "Agreement") with Recall. At all relevant times, Plaintiff insured the property.

On June 28, 2012, "a large section of the roof of [the Warehouse] collapsed," killing a Recall worker and causing the destruction of some of the property. Am. Compl. ¶¶ 17-18. Pursuant to the Agreement, Plaintiff paid WilmerHale significantly more than $75,000 for the value of the property and additional expenses incurred as a result of the collapse. Plaintiff alleges that it is "subrogated to the rights of WilmerHale to the extent of its payments." Id. ¶ 20.

### A. The Complaint and First Motion to Dismiss

On June 22, 2013, Plaintiff filed a complaint asserting claims against Defendants for gross negligence, breach of contract and warranty, and bailment. Compl., ECF No. 1. On August 23, 2013, Defendants filed a motion to dismiss for failure to state a claim and for lack of

---

[1] Unless otherwise noted, the facts are derived from Plaintiff's First Amended Complaint, ECF No. 14.

subject matter jurisdiction, in which they argued that Plaintiff had failed to state a facially plausible claim for gross negligence, without which Defendants' liability was limited to $54,706, below the $75,000 threshold for diversity jurisdiction. Mot. Dismiss, ECF No. 7.

On December 19, 2013, the Court dismissed Plaintiff's gross negligence claim without prejudice, finding that Plaintiff's pleadings as to the gross negligence claim were "conclusory factual assertions." Mem. Op. 5-6 (Williams, J.), ECF No. 12. The Court did not rule on the other two claims and granted Plaintiff 30 days to file an amended complaint. *Id.* at 6-7.

### B. The Amended Complaint

On January 17, 2014, Plaintiff filed its First Amended Complaint, adding two defendants: (1) Lorenzo Piard ("Piard"), a Maryland resident and temporary worker who allegedly caused the roof collapse while operating Recall's "order picker," a motorized device driven on the Warehouse floor to load and unload items from storage shelves; and (2) Kelly Services, Inc., a temporary employment agency incorporated in Delaware with its principal place of business in Michigan, which had hired Piard to work at Recall. Plaintiff asserted that Piard, while operating an order picker, caused the roof collapse by striking a storage rack, causing it "to tip over onto an adjoining rack, which resulted in a domino effect of collapsing rack systems." Am. Compl. ¶ 30. These collapsing racks struck a building support column, which led to the partial roof collapse that killed a Recall worker and destroyed the property.

In support of its claim for gross negligence, Plaintiff alleged that Recall had allowed Piard to operate the order picker even though he was not properly trained and certified to do so, as required by Maryland Occupational Safety and Health ("MOSH") regulations and by Recall's standard operating procedures and policies. Moreover, Recall allowed him to operate the order picker under hazardous conditions. After the roof of the facility had been raised to 36 feet by

jacking up the building's columns in 2000, during which a corner of the roof of the Warehouse failed and had to be rebuilt, Recall modified its storage racks to increase their height to approximately 33 feet and installed them in a manner that "created small enclosed tunnels at floor level" such that warehouse workers had to "operate their order pickers in this small enclosed space while removing and replacing storage boxes from the humongous 33 foot high racks." Am. Compl. ¶¶ 26-27. According to a report of an investigation into the accident by MOSH, which Plaintiff attached to the First Amended Complaint, some of the racks were observed to be overstressed and deformed. Am. Compl. Ex. B., ECF No. 14-2, at 37. Plaintiff alleged that Piard struck an overstressed rack while operating the order picker in one of the enclosed tunnel spaces, triggering the roof collapse.

On February 25, 2014, Recall filed a Motion to Dismiss as to Plaintiff's First Amended Complaint, arguing that Plaintiff has still failed to state a claim for gross negligence, such that the Court must dismiss all claims against Defendants for lack of subject matter jurisdiction. Mot. Dismiss Am. Compl., ECF No. 30. A separate Motion to Dismiss by Defendants Piard and Kelly Services, ECF No. 32, is addressed in a separate Memorandum Opinion.

## II. DISCUSSION

### A. Legal Standards

A court must deny a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim where the complaint alleges enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Rule 12(b)(6) 'does not countenance . . . dismissals based on a judge's disbelief of a

complaint's factual allegations.'" *Colon Health Ctrs. of Am., LLC v. Hazel*, 733 F.3d 525, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). Rather, in assessing whether this standard has been met, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678.

When a Federal Rule of Civil Procedure 12(b)(1) motion is raised, the burden of proving subject matter jurisdiction is on the plaintiff. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768-69 (4th Cir. 1991). In determining whether jurisdiction exists, the district court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Id.* The moving party should only prevail if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Id.*

### B. Gross Negligence

#### 1. Choice of Law

In their briefs, the parties analyze Plaintiff's gross negligence claim both under the law of Maryland, where the underlying accident occurred, and that of New York, which is the law designated in the Agreement's choice-of-law provision.[2] Mot. Dismiss Am. Compl. Ex. A ¶

---

[2] On the choice of law issue, the Court relies on the copy of the Agreement appended by Defendants to their Motion to Dismiss. Mot. Dismiss Am. Compl. Ex. A, ECF No. 30-2. Although as a general rule, extrinsic evidence should not be considered at the Rule 12(b)(6) stage, a court may consider a document attached to a defendant's motion to dismiss if the document "was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge the authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212,

21(c). Both parties concede that there is no material difference between the two states' definition for gross negligence.

Although New York law may apply to Plaintiff's claims of breach of contract and bailment, gross negligence is a tort claim, to which Maryland law applies. Federal courts exercising diversity jurisdiction over state law claims apply the choice of law rules of the forum state. *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 491 (1941)). Under Maryland law, the tort doctrine of *lex loci delicti* provides that the substantive law to be applied in a tort case is that of the state in which the wrong occurred, in this case, Maryland. *Philip Morris v. Angeletti*, 752 A.2d 200, 230 (Md. 2000). See *Jones v. Koons Auto., Inc.*, No. DKC 09-3362, 2013 WL 3713845, at *6 (D. Md. July 15, 2013) (applying Maryland law to a tort claim where plaintiff pled both tort and contract claims and explaining that the contractual choice-of-law provision applied only to contract disputes).

### 2. Pleading Standard

In their Motion to Dismiss, Defendants assert that "under Maryland law, gross negligence must be pled with specificity, meeting the heightened standard for fraud." Mot. Dismiss Am. Compl. 10. However, federal courts sitting in diversity must apply state substantive law and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965). Thus, even though gross negligence is a matter of state law, federal pleading standards apply. See *Dunbar v. Wells Fargo Bank, N.A.*, 709 F.3d 1254, 1257 (8th Cir. 2013); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 155 (5th Cir. 2010); *Andresen v. Diorio*, 349 F.3d 8, 16-17 (1st Cir. 2003).

---

234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). In this case, Plaintiff relies on the Agreement in pleading its breach of contract claim against Defendants, Am. Compl. ¶ 37, and challenges neither the document's authenticity nor Defendants' use of the document in the briefs.

Because there is no heightened pleading standard for gross negligence under federal procedural law, this Court will assess the adequacy of the complaint under the Rule 8(a)(2) notice pleading standard. *See Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d. 464, 490 n.8 (D. Md. 2009) (citing *Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965)).

In support of its assertion that Plaintiff must meet a heightened pleading standard, Defendants rely on two unpublished decisions from this District. In *MTB Services, Inc. v. Tuckman-Barbee Construction Co.*, No. RDB-12-02109, 2013 WL 1819944 (D. Md. Apr. 30, 2013), the Court found that it would be futile to amend the complaint because the plaintiff had offered only "general and conclusory allegations" to support a gross negligence claim. *Id.* at at *4. Similarly, in *Wright v. Carroll County Board of Education*, No. 11-cv-3103, 2012 WL 1901380, (D. Md. May 24, 2013), the Court found the plaintiff's complaint to be "devoid of adequate 'factual allegations'" that stated a cause of action for gross negligence. *Id.* at *13. Neither case holds that there is a heightened federal pleading standard for gross negligence akin to the Rule 9(b) standard for fraud, and this Court declines to do so now. *See Proctor*, 645 F. Supp. 2d at 490 n.8.

### 3. Analysis

Plaintiff's amended complaint sufficiently states a claim for gross negligence. Under Maryland law, gross negligence is "something *more* than simple negligence, and likely more akin to reckless conduct." *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (emphasis in original) (internal citations omitted). It is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Id.*

A wrongdoer engages in gross negligence when "he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Id.*

Under this standard, courts have found gross negligence adequately pled in cases in which a plaintiff has alleged that a defendant has displayed utter indifference or thoughtless disregard to the rights of others by failing to take certain actions to address warning signs that arguably would have prevented the harm. *See Proctor*, 645 F. Supp. 2d. at 490 (finding that complaint that "outlined numerous irregularities" in the settlement and title documents that defendant had a duty to review, as well as in the manner in which money was transferred" adequately pled gross negligence); *Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d 659, 669-70 (D. Md. 2012) (finding that allegations that defendant school district was aware that a classmate repeatedly engaged in sexual harassment of the plaintiff, refused to act in response to the plaintiff's complaints, and assigned the classmate to the plaintiff's classroom the following school year stated a cognizable claim for gross negligence). *See also Travelers Indem. Co. v. Losco Group, Inc.*, 136 F. Supp. 2d 253, 257 (S.D.N.Y. 2001) (finding that allegations including that defendant failed to inspect steel trusses, to notice and address design discrepancies, to assess the manufacturer's experience in fabricating steel trusses, and to verify a welder's certifications were sufficient to state a claim for gross negligence).

Taking Plaintiff's allegations as true and construing them in their most favorable light, the Amended Complaint states a plausible claim that Defendants were grossly negligent. Here, among other allegations, Plaintiff alleged that Defendants "willfully and intentionally disregard[ed] notice of hazardous conditions and hazardous operations," including "knowingly disregarding evidence that the racking system in the building was overloaded and overstressed," and that they "fail[ed] to properly investigate and confirm that temporary workers . . . were

properly trained and certified in the operation of order pickers," which ultimately led to the partial building collapse. Am. Compl. ¶¶ 34(a), (e), & (s). Plaintiff alleged specific facts to support the inference that, in an effort to maximize its storage capacity, Recall arranged its warehouse in a manner that created substantial risk to the safety of life and property. The building had been modified in 2000 to have a 36-foot high roof, a process which included "jacking up" building columns. During the expansion, a corner of the roof of the Warehouse failed and had to be rebuilt. Recall then installed approximately 33-foot tall storage racks that were "designed and installed in a manner that created small enclosed tunnels at floor level." *Id.* at ¶¶ 26-27. These racks were then loaded with sufficient material that they were visibly deformed and overstressed.

At the same time, Defendants allegedly allowed an employee who "was not properly trained and certified" to operate an order picker to do so in this difficult environment in which the striking of a storage rack could and did lead to "a domino effect" of multiple overstressed racks toppling over, damaging a building column, and causing a roof collapse that killed a worker and destroyed property. *Id.* at ¶ 16. Although no one fact in the Amended Complaint establishes gross negligence, when all of these facts are taken together, Plaintiff's Amended Complaint sufficiently supports the inference that Defendants could have acted with "thoughtless disregard of the consequences without the exertion of any effort to avoid them."[3]

---

[3] As stated above, both parties concede that there is no material difference between Maryland and New York's definitions of gross negligence. Under New York law, gross negligence is defined as "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Traveler's Indem. Co.*, 136 F. Supp. 2d. at 256 (quoting *Sommer v. Federal Signal Corp.*, 583 N.E.2d 1365 (N.Y. 1992)). Without assessing whether the parties are correct that there is no difference between Maryland and New York's definitions of gross negligence, the Court concludes that Plaintiff's amended complaint also states a claim for gross negligence under New York law, and would have overcome this motion to dismiss under either analysis.

Defendants argue that the facts in the Amended Complaint may not be relied upon where they conflict with statements in the MOSH report, which Plaintiff attached to its Amended Complaint. In general, an exhibit attached to the complaint is part of the pleading, and prevails when there is a conflict between material facts in the exhibit and the allegations of the complaint. Fed. R. Civ. P. 10(c); *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465-68 (4th Cir. 1991) (relying on a time limitation stated in a contract and performance bond attached to the complaint, rather than the time period alleged in the complaint, to conclude that the plaintiff's claim was time-barred). This general principle, however, does not require that everything stated in the MOSH report be taken as true. Unlike in *Fayetteville Investors*, the MOSH report is not an evidentiary document, but a report containing hearsay conclusions of an investigator. In that sense, it is similar to the report attached to the complaint in *Gant v. Wallingford Board of Education*, 69 F.3d 669 (2d. Cir. 1995). In *Gant*, the plaintiffs attached to their discrimination complaint a school superintendent's report of an investigation into the plaintiffs' allegations of discrimination. *Id.* at 674-75. The Second Circuit found that the district court misapplied Rule 10(c) when it adopted as true the full contents of the superintendent's report, including exculpatory conclusions that contradicted plaintiff's allegations of discrimination, and dismissed the plaintiffs' claims. *Id.*

Application of *Gant* to this case is warranted because in the case of investigative reports such as the MOSH report, full reliance on their content is inappropriate given that investigations differ in their scope, procedure, and purpose. The MOSH report itself acknowledged that its investigation was by no means comprehensive, when it noted that although interviews with possible witnesses were scheduled, upon arrival at least one of the witnesses "would not talk to us[.] . . . [and] [m]ost of those interviewed refused to sign their statements." Am. Compl. Ex. B

16-17. Where relevant witnesses might not have been interviewed and were not subject to compulsory process, and the scope and purpose of the investigation are unclear, it would be particularly inappropriate to draw the inference that there could have been no gross negligence because of the absence of significant findings in the MOSH Report. Specifically, Defendants assert that because MOSH did not classify the lack of training certification as "willful" or "serious" based on statements provided to it by Defendants themselves, and because the MOSH report did not contain "any critique of Recall's operating procedures, evaluate the condition of the racks prior to the collapse, or issue any citation relative to the way the racks were loaded," Defs.' Reply 4-5, ECF No. 37, the Court should take as definitively refuted Plaintiff's allegations that Piard was not properly trained to operate the order picker and that the racks were overloaded at the time of the accident. But under the reasoning of *Gant*, it would be inappropriate to rely on the MOSH report to dismiss the case and foreclose discovery, which is the approved means under the Federal Rules of Civil Procedure by which to establish definitively the facts relevant to this case. It may be that after discovery, the facts do not support Plaintiff's allegations.[4] At this stage of the case, however, because Plaintiff has sufficiently alleged gross negligence, the Amended Complaint will not be dismissed.

### C. Subject Matter Jurisdiction

In their Motion, Defendants' only argument challenging Count II (Breach of Contract and Warranty) and Count III (Bailment) is that if the Court dismissed Plaintiff's gross negligence claim, Plaintiff's recovery would be limited to $54,706, pursuant to the limitation of liability

---

[4] Because it is not reasonable to expect the same level of factual development pre-discovery as compared to post-discovery, the Court finds unpersuasive Defendants' citation to *Markevicz v. Garcia*, No. 8:08-cv-02877-AW, 2011 WL 6888641 (D. Md. Dec. 29, 2011), and *Marriott Corp. v. Chesapeake & Potomac Tel. Co. of Md.*, 723 A.2d 454 (Md. Ct. Spec. App. 1998), in which the courts found a lack of sufficient evidence of gross negligence to defeat a summary judgment motion.

provision in the Agreement, and the Court would therefore lack subject matter jurisdiction over the remaining two claims. As explained above, the Court has denied Defendants' motion to dismiss Plaintiff's gross negligence claim. Thus, even assuming that Plaintiff's recovery would be so limited, Counts II and III remain in the case under the doctrine of supplemental jurisdiction because they "form part of the same case or controversy" as the gross negligence claim, which alleges damages greater than $75,000. 28 U.S.C. § 1367(a); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558-59 (2005).

Moreover, based on the Court's denial today in a separate Memorandum Opinion of the Motion to Dismiss by Defendants Kelly Services, Inc. and Lorenzo Piard, Counts IV, V, and VI, all of which allege damages greater than $75,000, remain in the case. Because these counts satisfy the requirements for federal diversity jurisdiction, and all counts in the Amended Complaint "form part of the same case or controversy," they provide an additional basis by which Counts II and III remain in this case through supplemental jurisdiction. 28 U.S.C. § 1367(a); *Exxon Mobil Corp.*, 545 U.S. at 558-59.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED. A separate Order follows.

Date: August 1, 2014

THEODORE D. CHUANG
United States District Judge