UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

GREAT NORTHERN INSURANCE
COMPANY, *as subrogee of Wilmer Cutler
Pickering Hale and Dorr, LLP*,

    Plaintiff,

v.

RECALL TOTAL INFORMATION
MANAGEMENT, INC., *et al.*,

    Defendants.

Civil Action No. TDC-13-1829

**MEMORANDUM OPINION**

This matter is before the Court on a Motion to Dismiss Counts IV, V, and VI of Plaintiff Great Northern Insurance Company's First Amended Complaint by Defendants Kelly Services Inc. ("Kelly Services") and Defendant Lorenzo Piard ("Piard") (collectively, "Defendants"). ECF No. 30. At issue is whether Plaintiff has properly alleged that (1) Defendants owed a duty of care to Plaintiff's subrogor, such that Plaintiff has sufficiently stated a claim for negligence (Counts IV and V); and (2) Kelly Services is vicariously liable for Piard's allegedly negligent act (Count VI). Having reviewed the pleadings and supporting documents, the Court finds no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the following reasons, Defendants' Motion to Dismiss is DENIED.

## I. BACKGROUND[1]

Plaintiff is an insurance company doing business in Maryland. The four defendants in this case are Recall Total Information Management, Inc. ("Recall Total"), Recall Secure Destruction Services, Inc. ("Recall Secure"), Kelly Services, and Lorenzo Piard. At all relevant times, Recall Total and Recall Secure (collectively, "Recall") together operated a document storage warehouse facility located in Landover, Maryland (the "Warehouse"). Pursuant to an Agreement for Services with Recall, Kelly Services provided temporary workers for Recall's Warehouse. Piard is a Maryland resident and temporary worker employed by Kelly Services and assigned to work at the Warehouse.

Nonparty Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") is a law firm with an office in Washington, D.C. WilmerHale stored some of its business records, documents, and other property (the "property") at the Warehouse, pursuant to a Master Services Agreement with Recall. At all relevant times, Plaintiff insured the property.

On June 28, 2012, "a large section of the roof of [the Warehouse] collapsed," killing a Recall worker and causing the destruction of some of the property. Am. Compl. ¶¶ 17-18, ECF No. 14. Pursuant to the terms and conditions of its insurance policy, Plaintiff paid WilmerHale significantly more than $75,000 for the value of the property and additional expenses incurred as a result of the collapse. Plaintiff alleges that it is "subrogated to the rights of WilmerHale to the extent of its payments." *Id.* ¶ 20.

On June 22, 2013, Plaintiff filed a complaint asserting claims solely against Recall for gross negligence, breach of contract and warranty, and bailment. Compl., ECF No. 1. On December 19, 2013, the Court granted in part a Motion to Dismiss filed by Recall, dismissing

---

[1] Unless otherwise noted, the facts are derived from Plaintiff's First Amended Complaint, ECF No. 14.

2

without prejudice Plaintiff's gross negligence claim. Mem. Op. 5-6 (Williams, J.), ECF No. 12. The Court did not rule on the other two claims and granted Plaintiff 30 days to file an amended complaint. *Id.*

On January 17, 2014, Plaintiff filed its First Amended Complaint, adding Kelly Services and Piard as defendants. Among other claims, Plaintiff alleged that Kelly Services assigned Piard to Recall's Warehouse but failed to confirm that Piard was properly trained, qualified, and certified to operate the order picker and other equipment used at the Warehouse. Plaintiff alleged that Recall then allowed Piard to operate the order picker even though he was not properly trained and certified to do so, as required by Maryland Occupational Safety and Health ("MOSH") regulations and by Recall's standard operating procedures and policies.

Plaintiff also asserted that Piard "carelessly and recklessly" operated an order picker without the proper certification and training, and struck an overstressed storage rack, causing it "to tip over onto an adjoining rack, which resulted in a domino effect of collapsing rack systems." Am. Compl. ¶ 51. These collapsing racks struck a building support column, which led to the partial roof collapse that killed a Recall worker and destroyed the property.

On March 14, 2014, Kelly Services and Piard filed this Motion to Dismiss. The Court addresses in a separate opinion Recall's Motion to Dismiss, which is also before the Court. Recall's Mot. Dismiss Am. Compl., ECF No. 30.

## II. DISCUSSION

### A. Legal Standard

A court must deny a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim where the complaint alleges enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Rule 12(b)(6) 'does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.'" *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 525, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams*, 490, U.S. 319, 327 (1989)). Rather, in assessing whether this standard has been met, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678.

### B. Analysis

To state a claim for negligence under Maryland law, a plaintiff must allege that "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Doe v. Pharmacia & Upjohn Co.*, 879 A.2d 1088, 1092 (Md. 2004). Here, Defendants argue that the Court should dismiss Plaintiff's negligence claims against them because they owed no legally cognizable tort duty to Plaintiff's subrogor, WilmerHale. Kelly Services also argues that even if the Court concludes that Piard had such a duty, Kelly Services is not vicariously liable for Piard's alleged negligent acts because he was acting as Recall's "borrowed servant" at the time of those acts.

As set forth below, the Court concludes that the Complaint properly alleged that Piard owed a duty of care to Recall's customers who stored property at the Warehouse, including

WilmerHale, and that Kelly Services owed Recall's customers a duty to hire and train its employees. Any dispute as to whether liability for Kelly Services' duty was shifted to Recall by contract is a question of fact that would be inappropriate for the Court to determine at the 12(b)(6) stage. The Court also concludes that the Amended Complaint properly alleged that Kelly Services is vicariously liable for Piard's alleged negligent acts. Thus, Plaintiff's Amended Complaint properly states claims for negligence in Counts IV and V and *respondeat superior* liability in Count VI.

1. **Defendants' Tort Duties**

Although there is "no precise formula" for determining the existence of a tort duty between parties, among the key factors that Maryland courts generally consider are: the nature of the harm likely to result from a failure to exercise due care, the foreseeability of the harm, and the relationship between the parties. *See Doe* 879 A.2d at 1092-93; *Jacques v. First Nat'l. Bank of Md.*, 515 A.2d 756, 759-60 (Md. 1985). In this instance, the nature of the harm—damage or destruction of property—falls squarely within the range of harms actionable under tort law, and it was reasonably foreseeable that a lack of due care by an order picker operator could result in such damage. Defendants argue, however, that Plaintiff has not stated a valid claim for negligence because neither Piard nor Kelly Services had a sufficiently close relationship with Recall's storage customers to support the existence of a duty of care. Mot. Dismiss 5. Defendants make two primary claims: (1) there is no duty of care because neither Piard nor Kelly Services had a contractual relationship with WilmerHale; and (2) imposing a duty of care to Recall's customers is contrary to Maryland law because it "would effectively create a duty to an indeterminate class of people despite [Defendants] having no relationship with that class or control over who becomes a member of that class." Mot. Dismiss 5-8.

Although historically, contractual privity was a requirement to establish a duty of care in certain tort actions, the Maryland Court of Appeals has recognized that in cases involving physical harm to persons or property, such a requirement no longer exists. *Council of Co-Owners Atlantis Condo., Inc. v. Whiting-Turner Contracting Co.*, 517 A.2d 336, 341 (Md. 1986) ("The requirement of privity of contract has been abandoned as a basis for recovery by third parties for physical harm to themselves and tangible things against those who negligently supply, repair, or construct things so as to leave them in an unreasonably dangerous condition.") (quoting *Prosser and Keeton on the Law of Torts*, § 93, at 667-68 (W. Page Keaton et al. eds., 5th ed. 1984)).[2] Rather, if a party enters into a contract under which it may affect the interests of another person, it owes a duty to avoid causing physical harm, even if it lacks privity of contract with that person:

> But by entering into a contract with A, the defendant may place himself in such a relation toward B that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that B will not be injured. The incidental fact of the existence of a contract with A does not negative the responsibility of the actor when he enters upon a course of affirmative conduct which may be expected to affect the interests of another person.

*Council of Co-Owners*, 517 A.2d at 341 (quoting *Prosser* § 93 at 667-68).

This principle is illustrated in *Pacific Indemnity Co. v. Whaley*, 560 F. Supp. 2d. 425 (D. Md. 2008), in which an insurance company subrogee brought a negligence claim against the defendant subcontractor when the tarp that the defendant stapled to the roof of the subrogor's

---

[2] To the extent that such a requirement remains, it arises in cases involving only "economic loss"—intangible harms not involving physical damage to persons or property. *See, e.g., Jacques*, 515 A.2d at 759-60 (contrasting economic loss cases, which require "an intimate nexus" between the parties consisting of "contractual privity or its equivalent," with those cases involving risk of personal injury, for which "no such direct relationship need be shown"). But even in cases involving only economic loss, Maryland courts have, depending on the facts, found a sufficiently intimate nexus to establish a duty of care even between parties that lack contractual privity. *See, e.g., Walpert, Smullian & Blumenthal, P.A. v. Katz*, 762 A.2d 582, 608-09 (Md. 2000); *Council of Co-owners*, 517 A.2d at 344.

home was blown off during a storm, damaging the interior. *Id.* at 427. Applying Maryland tort law, the Court found that where there was "physical damage... to tangible things," it was "clear that once [the defendant] undertook the responsibility of tarping the roof, it owed a 'tort duty' to perform the work with reasonable care," and that "[t]his tort duty exists notwithstanding the lack of contractual privity" between the subcontractor and the property owner. *Id.* at 430 nn.5-6 (citing *Klein v. Dougherty*, 87 A.2d 821, 825 (Md. 1952)). Similarly, in this case Piard owed a duty of reasonable care to Recall's storage customers, even without a contractual relationship with them, because he could be expected to affect their interests as he operated machinery to move their property around within the Warehouse. Kelly Services also arguably owed them a duty of care in hiring and training Piard, which the Court discusses in further detail in the following section.

Defendants further assert that Maryland law would not countenance finding a duty of care in this case because to do so would effectively establish a duty to "hundreds or thousands of companies and individuals with which/whom [Defendants] never [had] any contact," Mot. Dismiss 9, and would amount to creating a duty to "an indeterminable class of people" or "the public at large," Mot. Dismiss 6-7. In support of this argument, Defendants cite *Valentine v. On Target, Inc.*, 727 A.2d 947 (Md. 1999), in which the court held that a gun shop did not owe a duty to a victim murdered with a gun stolen from the store because it did not owe a duty to the public at large to prevent the theft of its handguns, and because to do so would create "an indefinite duty to the general public." *Id.* at 953. Defendants also rely on *Doe*, 879 A.2d 1088, in which the court found that a pharmaceutical company did not owe a duty to a woman who contracted HIV from her husband, a company lab technician who had been infected while handling the pathogen at work. *Id.* at 1090-91. The *Doe* court held that, while the company

owed such a duty to the employee, this duty did not extend to his spouse because to do so "would create an expansive new duty to an indeterminate class of people," including "all the sexual partners of its employees . . . [and] any person who could have contracted HIV-2 from the employee by any means." *Id.* at 1095-96.

Defendants assert that the class of Recall's customers here is "by definition indeterminable" because Defendants had no control over, or knowledge of who they were, and because WilmerHale became Recall's customer after Kelly Services had already entered into its Agreement for Services with Recall. Defs.' Reply 6-7, ECF No. 40. The present case, however, is readily distinguishable because it does not require finding a duty of care to an "indeterminable class of people" or "the public at large." The class of individuals or entities to whom Defendants would owe a duty of care is limited to those Recall customers whose physical property was stored in the Warehouse. Plaintiff does not seek to extend a duty of care outside the Warehouse to include the classes of individuals at issue in *Valentine* or *Doe*, such as family members or clients of storage customers, or the general public. Rather, the class of customers, although perhaps numerous, consists of a specific, defined list that undoubtedly could, if required, be compiled from Recall's business records. That Defendants did not know each customer in advance by name does not, as Defendants argue, create a "boundless category of potential plaintiffs," such that it would "'make tort law unmanageable.'" *Id.* at 6 (quoting *Doe*, 879 A.2d at 1096). *See Henley v. Prince George's County*, 503 A.2d 1333, 1340-41 (Md. 1986) (stating that a defendant's duty to a class of people is not necessarily limited by "those within a foreseeable zone of danger whose identities are known in advance[;] . . . that such persons could not be identified in advance does not mean that they are not included in the class"). Accordingly, the Court concludes that the Complaint sufficiently alleges that Defendants owed a

8

tort duty to the closed universe of Recall customers who stored their physical property in the Warehouse, including Plaintiff's subrogor.

### 2. Kelly Services's Duty to Train its Employees

Although Piard, as the order picker operator who allegedly started the chain reaction that led to the destruction of property, primarily owed a duty of care to Recall's customers, the Complaint also sufficiently alleges a duty of care on the part of Kelly Services. Specifically, in Count V of the Amended Complaint, Plaintiff alleges that Kelly Services assigned Piard to work at the Warehouse without confirming that Piard was properly trained and certified to operate Recall's order picker and other equipment. Am. Compl. ¶¶ 61-62.

Under Maryland law, employers can be liable to third parties for negligent hiring or training of their employees. *See Williams v. Cloverland Farms Dairy, Inc.*, 78 F. Supp. 2d 479, 484 (D. Md. 1999) (applying Maryland law to find a cause of action for employer's negligent failure to train). *See also Fidelity First Home Mortg. Co. v. Williams*, 56 A.3d 501, 511-12 (Md. Ct. Spec. App. 2012) (stating that employers may owe a duty arising from its role in hiring, supervising, and retaining employees). To establish a cause of action for negligent hiring or training, the plaintiff must show that the injury was caused by the employee's negligence, that the employee knew or should have known that the employee was capable of inflicting the harm, and that the failure to properly hire or train their employees was the proximate cause of the harm. *Cloverland Farms*, 78 F. Supp. 2d at 484.

Here, Plaintiff alleged that Kelly Services failed to confirm that Piard, a Kelly Services employee, was properly trained and certified to operate the order picker and other mechanized equipment routinely used at the Warehouse, but nevertheless assigned Piard to the Warehouse. Plaintiff also alleged that Piard's negligent operation of the order picker caused the roof collapse

9

that destroyed the property. The Court concludes that Plaintiff has sufficiently pled a negligence claim against Kelly Services on the basis of its duty to hire and train its employees.

Kelly Services argues that the Agreement for Services between Kelly Services and Recall assigned all responsibility for training, directing, and supervising Kelly Services employees to Recall. Defs.' Reply 9-10. These contract provisions assign responsibility to Kelly Services for "[r]ecruiting, hiring, assigning, orienting, reassigning, counseling, disciplining, and discharging the Kelly Temporary Employees," Am. Compl. Ex. A § 2(a)(i), but to Recall for the "direction, supervision and control" of the employees' services, as well as "providing adequate instructions, assistance, supervision and time to perform the services requested of them." *Id.* at § 3(a). Because these provisions do not unambiguously identify which company had responsibility for training employees such as Piard and ensuring that they had the proper certifications to operate machinery such as an order picker,[3] it would be inappropriate for the Court to determine this question of fact at the 12(b)(6) stage and conclude that Kelly Services' duty to hire and train had been shifted to Recall by contract. *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 978 F.2d 140, 143 (4th Cir. 1992) ("[T]he construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim."). Accordingly, the Court concludes that Plaintiff has properly stated a negligence claim against Kelly Services.

   3. **Kelly Services's Vicarious Liability**

In Count VI, Plaintiff alleges that Kelly Services is vicariously liable for the negligent acts of Piard. Maryland courts have recognized consistently the doctrine of *respondeat superior*, whereby employers are liable for employee's torts committed within the scope of employment.

---

[3] The only reference to training is a narrow one: the requirement that Recall provide "information, training, and safety equipment with respect to hazardous substances." Am. Compl. Ex. A § 3(a).

*Embrey v. Holly*, 442 A.2d 966, 969 (Md. 1982) ("[I]t is hornbook law that an employer is ordinarily responsibly for the tortious conduct of his employee committed while the servant was acting within the scope of the employment relationship."). Here, Plaintiff alleges that Kelly Services hired Piard to operate order pickers and other mechanized equipment in Recall's Warehouse, and that Piard "carelessly and recklessly operated an order picker," causing the accident. Am. Compl. ¶¶ 51-52. Kelly Services was Piard's employer, *see* Am. Compl. Ex. A at § 2(a) ("[E]ach Kelly Temporary Employee supplied to Customer pursuant to this Agreement shall be a full time employee of Kelly, not a 1099 contractor."), and is therefore liable for Piard's alleged negligent acts.

Although Kelly Services claims that Count VI fails to state a claim because Kelly Services has no liability pursuant to the "borrowed servant" doctrine, this argument fails under the facts of this case. Under Maryland law, where a temporary employment agency's employees are assigned to another employer, "that employee's status under the borrowed servant doctrine is immaterial" if the temporary employment agency and the borrowing employer "contractually agreed that one or the other should bear the risk of a particular employee's negligent acts." *NVR, Inc. v. Just Temps*, 31 F.App'x. 805, 807 (4th Cir. 2002); *Sea Land Indus. Inc. v. Gen. Ship Repair Corp.*, 530 F. Supp. 550, 563 (D. Md. 1982). Here, the Agreement for Services between Kelly Services and Recall states that Kelly Services is responsible for "[p]ayment for injury to people (including death) or loss to property caused by negligent or intentional conduct of Kelly Temporary Employee[s] acting within the scope of their employment," Am. Compl. Ex. A § 2(a)(xi). The Agreement for Services also contains indemnification clauses for both Kelly Services and Recall. Specifically, Kelly Services agreed to indemnify Recall against "all demands, claims, actions, losses, judgments, costs and expenses . . . arising out of "[a]ny

negligent act or omission on the part of the Kelly Temporary Employees which occur within the scope of their employment, provided Kelly's indemnity obligation will be limited to property damage, bodily injury, and wrongful death." *Id.* at § 11 and 11(c). Recall agreed to indemnify Kelly Services against such liabilities arising out of "[a]ny negligent act or omission or intentional conduct on the part of [Recall]." *Id.* at § 12(b). These provisions are substantially similar to those cited by the court in *NVR, Inc.* to reject the argument that the borrowed servant doctrine precluded a temporary employment agency's liability. *NVR, Inc.*, 31 F. App'x at 807-08. Therefore, the borrowed servant analysis likewise does not apply here.[4]

Kelly Services further argues that Recall is solely responsible because among other liabilities, Recall agreed to indemnify Kelly Services against liability arising out of the "[u]se of any vehicle, machinery, equipment or material in the care, custody or control of Kelly Temporary Employees in connection with the performance of services under this Agreement." *Id.* at § 12(f). Plaintiff, on the other hand, argues that this provision, when read together with the preceding § 11, can only be taken to mean that Recall is solely responsible only where the use of its vehicles—and *not* the sole or partial negligence of a Kelly temporary employee—caused the damage. Opp. Mot. Dismiss 7. Because there are conflicting interpretations of ambiguous contract provisions, this issue should not be resolved through a motion to dismiss. *Martin*

---

[4] Kelly Services asserts that *NVR, Inc.* is distinguishable because in that case, the claims were brought by the borrowing employer against the temporary services agency. Defs.' Reply 10-11. There is nothing in *NVR, Inc.*, however, that explicitly or implicitly indicates that the core principle in that case—that the borrowed servant doctrine does not apply when a temporary employment agency contractually accepts liability for its employee's negligent acts—is invalid when the claim is brought by a third party. Although Kelly Services also relies on *Whitehead v. Safway Steel Products, Inc.*, 497 A.2d 803 (Md. 1985), that was a worker's compensation case in which, unlike here, there was no mention of contractual provisions allocating responsibility for employee negligence to either the borrowing employer or the temporary employment agency. *See id.*, at 78-84.

*Marietta Corp.*, 978 F.2d at 143. The Court concludes that Plaintiff has sufficiently stated a vicarious liability claim against Kelly Services.

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED. A separate Order follows.

Date: August 1, 2014

THEODORE D. CHUANG
United States District Judge